IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 08-00346-01-CR-W-DGK |
| JAVIER HERNANDEZ CARRILLO, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION
TO SUPPRESS EVIDENCE AND HIS STATEMENT**

Before the court is defendant's motion to suppress evidence and his statement on the grounds that (1) the search of his residence was illegal, (2) he did not knowingly and intelligently waive his right to remain silent, and (3) he was illegally arrested. I find that police searched defendant's residence pursuant to a valid search warrant, defendant knowingly and voluntarily waived his Miranda rights, and his arrest was supported by probable cause. Therefore, defendant's motion to suppress should be denied.

*I.   BACKGROUND*

On January 31, 2008, a confidential informant met with defendant and obtained a sample of illegal drugs. Police obtained a search warrant for defendant's residence that day. Five days later, after receiving information from the informant that defendant would be moving drugs or money, the warrant was executed. At the same time, defendant was stopped in his

vehicle. Police recovered illegal drugs, paraphernalia, and a loaded firearm in the residence. Defendant was questioned and admitted that the drugs and gun were his.

On December 15, 2008, an indictment was returned charging defendant with one count of conspiracy to possess and to distribute methamphetamine, in violation of 21 U.S.C. § 846; one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); one count of possession of a firearm while in the United States illegally, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a); and one count of criminal forfeiture pursuant to 21 U.S.C. § 853.

On April 27, 2009, defendant filed the instant motion to suppress (document number 24). On May 4, 2009, the government filed a response in opposition (document number 25). A hearing was held on May 13, 2009, a transcript of which was prepared and filed on May 19, 2009 (document number 28). On June 12, 2009, defendant filed supplemental suggestions in support of his motion (document number 35). On June 29, 2009, the government filed its supplemental suggestions in opposition (document number 37).

During the May 13, 2009, evidentiary hearing, the government appeared by Assistant United States Attorney David DeTar Newbert. The defendant was present, represented by Henri Watson and Patrick Berrigan. The following witnesses testified:

2

1. Detective Luis Ortiz, Kansas City, Missouri, Police Department, Gang Squad;

2. Special Agent Scott Francis, Bureau of Immigration and Customs Enforcement ("ICE"); and

3. Special Agent Mark King, ICE.

In addition, the following exhibits were marked and admitted into evidence:

P. Ex. 1: Affidavit and search warrant dated January 31, 2008;

P. Ex. 2: Copies of drug ledgers, picture identification of defendant, and insurance paperwork, all seized during execution of the search warrant;

P. Ex. 3: Picture of defendant;

D. Ex. 1: Miranda waiver form in Spanish, signed by defendant; and

D. Ex. 2: Summary of defendant's statement to police.

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. During the week of January 28, 2008, Detective Luis Ortiz receiving information about an illegal alien known as Tortuga who was selling methamphetamine from his residence at 6603 East 99th Terrace, Kansas City, Missouri (Tr. at 5). Detective Ortiz knew of a reliable confidential informant who could try to obtain drugs from Tortuga, later determined to be defendant (Tr. at 5, 53, 60-61).

3

2. On January 31, 2008, the CI[1] met with defendant at the 6603 East 99th Terrace residence (Tr. at 5). Prior to the CI entering the residence, Detective Ortiz searched the CI for drugs, weapons, and United States currency (Tr. at 5-6, 86). He had none (Tr. at 6). Detective Ortiz also provided the CI with a covert listening device so that Detective Ortiz could hear what was going on inside the residence (Tr. at 6-7). The CI had been instructed to try to get a sample of illegal drugs and information about Tortuga's involvement in drug trafficking (Tr. at 87).

3. While the CI was inside the residence, defendant told the CI that if he needed more methamphetamine or marijuana later on to call defendant or come by his residence to pick it up (Tr. at 7). Defendant gave the CI approximately 13.9 grams of methamphetamine and some marijuana as a sample[2] (Tr. at 6, 7). When the CI left the residence, the methamphetamine and marijuana were recovered by Detective Ortiz who immediately applied for a state search warrant (Tr. at 7). Special Agent Scott Francis remained in the area observing the residence with binoculars (Tr.

---

[1] For ease of reading, the CI will be referred to as "him" although it is unknown to me whether the CI was a male or a female.

[2] Detective Ortiz testified that only large-scale drug dealers give out samples, especially of the size given in this case (Tr. at 59, 63). The informant had told Tortuga that he would sell the drugs or return them (Tr. at 64).

4

at 69-70). After the CI left the residence, Special Agent Francis saw defendant come out of the house (Tr. at 72). He was wearing a blue and white jacket which is what the CI had said Tortuga was wearing (Tr. at 72).

4. The search warrant was issued the same day, January 31, 2008 (Tr. at 7-8). The search warrant stated that it must be executed within ten days (Tr. at 8, 29). Normally after a search warrant is obtained, the police will plan the execution of the search warrant around both safety and the likelihood that target will have the drugs with him (Tr. at 8).

5. On February 5, 2008, the police had the residence under surveillance and observed defendant leave in a white SUV (Tr. at 8, 9, 25, 26, 29). Special Agent Francis was present and identified defendant as the suspect to the other officers present (Tr. at 74, 75). Defendant was wearing the same blue and white jacket that he had on when Special Agent Francis saw him on January 31, 2008 (Tr. at 74). Police had received information from the CI that day that defendant was planning to deliver either methamphetamine or United States currency to either Overland Park or Kansas City, Kansas (Tr. at 9, 26, 27, 88-89). Defendant was observed driving toward Overland Park and Kansas City, Kansas, on I-435, which confirmed their information (Tr. at 27). Based on that information, an officer in a marked patrol car was asked to stop the vehicle (Tr. at 9-10, 25-26).

5

6. Defendant's car was stopped in the westbound lanes of 435 between 102nd and 103rd (Tr. at 26). Once the vehicle was stopped, Detective Ortiz approached defendant and told him that the Kansas City Police Department and Immigration and Customs Enforcement were conducting a narcotics investigation (Tr. at 10). Detective Ortiz asked for consent to look in defendant's vehicle, and defendant consented (Tr. at 10). Nothing was found (Tr. at 10). Detective Ortiz told defendant that a search warrant was being executed at his residence (Tr. at 10). Although defendant was not under arrest, he was taken back to his residence (Tr. at 10).

7. In his experience, Detective Ortiz has learned that tools of the drug trade include guns, drugs, scales, packaging material, cell phones, and heat sealers (Tr. at 11-12). Heat sealers are used to package money or drugs by sucking the air out of packages making them tighter and easier to conceal (Tr. at 12). It also helps to hide the smell of drugs (Tr. at 12-13).

8. During execution of the search warrant, police recovered approximately five to six pounds of methamphetamine, a kilo of cocaine, a small amount of marijuana, two scales, three heat sealers, a loaded .357 caliber Glock semi-automatic pistol, currency, a drug ledger, packaging, a kilo press, and information that defendant lived in the residence with his girl

6

friend Claudia Villegas and their toddler daughter (Tr. at 13-17, 58).

9. The following day, February 6, 2008, Claudia Villegas was advised of her <u>Miranda</u> rights in Spanish, and she admitted to having touched the Glock and the drugs (Tr. at 17, 90). She stated that she owned the Lincoln Navigator found at the residence, but that it had been titled in the name of John Cortez because he was in the country legally and Ms. Villegas was an illegal alien (Tr. at 63). She stated that a Carlos Romera had stayed at the residence but had been deported prior to the new year (Tr. at 90). She said another man nicknamed El Mudo had stayed there for about 15 days but had left about four days earlier (Tr. at 90).

10. Defendant was advised of his <u>Miranda</u> rights in Spanish, and he waived his <u>Miranda</u> rights (Tr. at 17, 18). He was advised of all of the items recovered from his residence, and he said that everything found in the residence was his and that his "wife" had nothing to do with it (Tr. at 18). Defendant, Detective Ortiz, and Special Agent Mark King were present during this interview (Tr. at 18). Defendant was cooperative (Tr. at 19). The interview took place in a room, the manner of the interview was "conversational," no threats were made, no one raised his voice, and no weapons were displayed (Tr. at 19-20). After the interview, defendant was transported to Kansas City,

7

Kansas, due to an outstanding fugitive warrant (Tr. at 20). After defendant said that everything found in the house belonged to him, he asked for a lawyer and the interview ended (D. Ex. 2).

### *III. SEARCH OF DEFENDANT'S RESIDENCE*

There is no question that the police had a warrant to search defendant's residence. It is not clear to me whether defendant is genuinely attacking the presence or validity of the search warrant. In his original motion, defendant states that, "The arresting officers lacked a warrant, probable cause or proper consent to enter and/or search the aforementioned residence". Defendant offers no legal authority other than a citation to <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963), which created the "fruit of the poisonous tree" doctrine. Additionally, he offers no argument or analysis to support the quoted assertion. In his supplemental motion, filed after the suppression hearing, defendant does not argue that police lacked authority to search his residence.

Clearly there was a search warrant in this case. And in the event defendant intended to attack the validity of the warrant, I will address that issue. The standard for evaluating the sufficiency of the information supporting a search warrant is set out in <u>Illinois v. Gates</u>, 462 U.S. 213 (1983):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons

>     supplying hearsay information, there is a fair probability
>     that contraband or evidence of a crime will be found in a
>     particular place.

Id. at 238. On a motion to suppress, a district court should not make a de novo determination of probable cause; rather the decision to issue the warrant is to be upheld if supported by substantial evidence in the record. Massachusetts v. Upton, 466 U.S. 727, 728 (1984); United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986). Great deference is accorded to the decision of the judicial officer who issued the warrant. United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995); United States v. Day, 949 F.2d 973, 977 (8th Cir. 1991).

Probable cause to issue a warrant must exist at the time it is issued. United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir. 1995); United States v. Steeves, 525 F.2d 33, 37 (8th Cir. 1975). The passage of time between the receipt of the information supporting the warrant and the issuance of the warrant must, however, be evaluated in the context of a specific case and the nature of the crime under investigation. United States v. Maxim, 55 F.3d at 397. "There is no bright-line test for determining when information is stale." Id. (quoting United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993)). Where the affidavit recites facts indicating the presence of an ongoing, continuous criminal enterprise, the passage of time becomes less

9

critical in evaluating probable cause. United States v. Rugh, 968 F.2d 750, 753 (8th Cir. 1992).

In assessing probable cause based upon information supplied by an informant, the core question is whether the information is reliable. United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). Information may be sufficiently reliable to support a probable cause finding "if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." Id. (citing Draper v. United States, 358 U.S. 307, 313 (1959)). If some information from an informant is shown to be reliable because of independent corroboration, "then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." Id.

The affidavit in support of the search warrant states that a confidential information, who did not possess any weapons, currency, or narcotics, knocked on the door of 6603 East 99th Terrace; the door was answered by a Hispanic male known to the informant as Tortuga; Tortuga invited the informant inside; the informant asked Tortuga if he had any methamphetamine; Tortuga told the informant to wait in the basement; Tortuga went to the upstairs and then came back to the basement with a clear plastic

10

bag containing methamphetamine; he told the informant it was a sample of what he possessed and if the informant wanted to buy it in large quantities, Tortuga could sell it because he had more; Tortuga asked the informant if he wanted a sample of marijuana and handed the informant a bag of marijuana. The informant left the residence and turned the drugs over to the police. The substances field tested positive for amphetamine and marijuana. The affidavit states that the police monitored the transaction through a listening device and that the confidential informant had been proven reliable in the past by providing detectives and agents with information that resulted in several state and federal arrests.

Based on the above, I find that the warrant is supported by probable cause. The information in the affidavit establishes that there was a fair probability that contraband or evidence of illegal drug trafficking would be found in defendant's residence. On the day the warrant was issued, the police monitored a conversation between the CI and an individual inside the residence wherein the individual gave methamphetamine and marijuana to the CI and said he had more and could provide it in large quantities (P. Ex. 1). Clearly the information in the affidavit was not stale, and therefore probable cause existed at the time the warrant was issued.

11

Finally, the information supplied by the CI was sufficiently reliable to support a probable cause finding since the person had a track record of supplying reliable information and the information was corroborated by the drugs obtained by the informant while inside the residence.

Based on all of the above, I find that the search of defendant's residence was pursuant to a valid warrant.

## *IV. DEFENDANT'S ARREST*

Defendant next argues that there was no probable cause to arrest him. This argument is without merit.

The Fourth Amendment protects, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004); United States v. Jones, 535 F.3d 886, 890 (8th Cir. 2008). Probable cause sufficient to make a warrantless arrest exists when "the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." United States v. Jones, 535 F.3d at 890; United States v. Torres-Lona, 491 F.3d 750, 755 (8th Cir. 2007). A probability or substantial chance of criminal activity, rather than an actual showing of

12

criminal activity is sufficient.  United States v. Jones, 535 F.3d at 890; United States v. Torres-Lona, 491 F.3 at 755.

"To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."  Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotation omitted).

In this case, defendant is essentially arguing that an actual showing of criminal activity is required.  He argues that there is no proof that he was Tortuga, that police only knew he had been inside the residence during the transaction between the CI and Tortuga.  Defendant's argument is without merit.  The police needed only a probability or substantial chance of criminal activity in order to arrest defendant.[3]

At the time of defendant's arrest, the police knew that he had been inside the residence on January 31, 2008, when the CI went inside, spoke with Tortuga, and obtained illegal drugs; that he matched the physical description of Tortuga given by the CI

---

[3] I note here that Detective Ortiz testified that when defendant was stopped and brought back to his residence, he was not under arrest.  However, there was no evidence presented about whether the defendant went willingly to his residence or was otherwise free to leave.  Therefore, I will assume, for purposes of this motion to suppress, that defendant was arrested at the time his car was stopped.

13

including the description of the blue and white jacket Tortuga was wearing; that the CI had learned on February 5, 2008, that Tortuga was planning to go to Kansas City, Kansas, or Overland Park that day to transport either money or drugs; that defendant left the residence and headed toward Kansas City, Kansas, and Overland Park in accordance with the information provided by the CI; and that defendant was the same man seen by Special Agent Francis at the residence the day the drugs were given to the CI. I find that this information establishes probable cause that the crime of illegal drug distribution was being committed at the time the police stopped defendant's vehicle.

Once defendant was stopped and his true identity was learned, he was held in custody pursuant to an outstanding fugitive warrant. He was subsequently transported to Kansas City, Kansas, pursuant to that outstanding warrant.

Therefore, because there was probable cause to arrest defendant at the time his car was stopped, and because he had an outstanding fugitive warrant, his arrest was not illegal and defendant's motion to suppress on this basis should be denied.

### V.    WAIVER OF MIRANDA RIGHTS

Finally, defendant argues in his original motion that he did not knowingly waive his constitutional right to remain silent or to consult with an attorney; however, he does not explain how, in light of the Miranda waiver form, this is so. Further, he does

14

not support his argument with any legal authority other than the
citation to Wong Sun.  In his supplemental motion, defendant
cites the boilerplate law on custodial interrogation; however, he
never actually claims that he was not advised of his Miranda
rights or that he did not voluntarily waive those rights.  Once
again, it is unclear precisely what defendant's argument is with
regard to his statements.[4]  In any event, I find that defendant
was advised of his Miranda rights and that he knowingly and
voluntarily waived those rights.

    The government bears the burden of proving by a
preponderance of the evidence that defendant made a knowing and
voluntary waiver of his Miranda rights.  Colorado v. Connelly,
479 U.S. 157, 158 (1986); United States v. Dougherty, 810 F.2d
763, 772 (8th Cir. 1987).  There is no requirement that, to be
voluntary, the waiver be the product of a free will.  Connelly,
479 U.S. at 170.  The sole concern of the Fifth Amendment, upon
which Miranda was based, is governmental coercion.  Id.; United
States v. Washington, 431 U.S. 181, 187 (1977).  The
voluntariness of a waiver of this privilege depends on the
absence of police overreaching, i.e., the relinquishment of the
right must have been voluntary in the sense that it was the

---

[4]I understand that defendant is asserting a fruit of the
poisonous tree theory; however, the law on custodial
interrogation is not relevant to a fruits argument which makes me
suspect that defendant intended to attack his statement on
grounds other than the fruits theory.

15

product of a free and deliberate choice rather than intimidation, coercion or deception.  Connelly, 479 U.S. at 170; Moran v. Burbine, 475 U.S. 412, 420 (1986); Fare v. C., 442 U.S. 707, 726-27 (1979).

An explicit statement of waiver is not invariably necessary to support a finding that the defendant waived his Miranda rights.  North Carolina v. Butler, 441 U.S. 369 (1979).  An express written or oral statement of waiver of Miranda rights is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver.  Id. at 373.

Whether a defendant waived his Miranda rights is a question of fact for the trial judge and must be determined on the particular facts and circumstances surrounding the case.  Id. at 374; United States v. Dougherty, 810 F.2d 763, 772 (8th Cir. 1987); Stumes v. Solem, 752 F.2d 317, 319 (8th Cir. 1985).  The totality of the circumstances test applies.  Dougherty, 810 F.2d at 773.

In this case, defendant read and signed a Miranda waiver form.  He spoke to the police in order to exonerate his common law wife by taking responsibility for the drugs and gun found in the residence.  He then invoked his right to counsel and the interview stopped.  It is clear that defendant understood his

16

rights and voluntarily waived his rights in order to say what he wanted to say, and he then invoked his rights to put a stop to the questioning. There is absolutely no evidence to support a finding that defendant did not knowingly or voluntarily waive his rights, and there is no evidence of police intimidation, coercion, or deception.

Based on the above, I find that defendant knowingly and voluntarily waived his <u>Miranda</u> rights and therefore his statement should not be suppressed.

## *VI. CONCLUSION*

Based on the above-stated findings of fact and the law as discussed in sections III through V, I make the following conclusions of law:

(1) The search of defendant's residence was conducted pursuant to a valid search warrant.

(2) Defendant's arrest was supported by probable cause.

(3) Defendant knowingly and voluntarily waived his <u>Miranda</u> rights.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress evidence and his statement.

17

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

                                       */s/ Robert E. Larsen*
                                       ROBERT E. LARSEN
                                       United States Magistrate Judge

Kansas City, Missouri
July 10, 2009