IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 08-00346-01-CR-W-NKL |
| JAVIER S. HERNANDEZ-CARRILLO, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
TO ACCEPT DEFENDANT'S GUILTY PLEA**

On September 28, 2009, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette Laughrey. I find that Defendant's plea was voluntary and therefore recommend that it be accepted.

## *I. BACKGROUND*

On December 15, 2008, an indictment was returned, charging Defendant with, inter alia: one count of conspiracy to possess and distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; one count of being an illegal alien in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a); and one count of criminal forfeiture pursuant to 21 U.S.C. § 853. A change-of-plea hearing was held on September 28, 2009. Defendant was present, represented by retained counsel Patrick Berrigan and Henri Watson. The government was represented by Assistant United States Attorney David DeTar Newbert. The proceedings were recorded and a transcript of the hearing was filed on September 29, 2009.

## *II. AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by

the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the

2

key." Id. (quoting Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III.  FINDINGS OF FACT

1. The parties consented to the delegation of the change of plea to the magistrate judge (Tr. at 5).

2. On December 15, 2008, an indictment was returned, charging Defendant with, inter alia: one count of conspiracy to possess and distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; one count of being an illegal alien in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a); and one count of criminal forfeiture pursuant to 21 U.S.C. § 853.  The court read these charges against Defendant and Defendant indicated he understood the nature of the charges (Tr. at 8-9).

3. The statutory penalty on the conspiracy charge (Count I) is not less than ten years but not more than life imprisonment, a fine of not more than $4,000,000, a supervised release term of not less than five years, and a $100 mandatory special assessment fee (Tr. at 9).  The statutory penalty on the firearm charge (Count III) is not more than ten years imprisonment, a fine of not more

3

Case 4:08-cr-00346-NKL   Document 52   Filed 10/02/09   Page 3 of 8

than $250,000, a supervised release term of not more than three years, and a $100 mandatory special assessment fee (Tr. at 9). Defendant was informed of the penalty ranges and indicated that he understood (Tr. at 9-10).

    4.     Defendant was advised of the following:

        a.     That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 10);

        b.     That he has the right to assistance of counsel throughout the trial (Tr. at 10-11);

        c.     That Defendant is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 11);

        d.     That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 11-12);

        e.     That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 12);

        f.     That Defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 12); and

        g.     That Defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 13).

    5.     Defendant was informed and understood that by pleading guilty, he was giving up all of the rights described above (Tr. at 13-14).

6. Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 14). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 14). Defendant stated that he understood (Tr. at 14).

7. There has been open file discovery in this case (Tr. at 14-15).

8. Defense counsel stated that he had reviewed the government's file and confirmed from his own independent investigation that it was wise for his client to plead guilty (Tr. at 15).

9. If this case were to go to trial the government's evidence against Defendant would be that during the week of January 28, 2008, the Bureau of Immigration and Customs Enforcement ("ICE") was contacted by Kansas City, Missouri Police Gang Squad Detective Ortiz concerning an illegal alien known only as "Tortuga" who was importing large amounts of crystal methamphetamine into the Kansas City, Missouri, area (Tr. at 16). A confidential informant had provided Detective Ortiz with information about Tortuga's activities (Tr. at 16). Tortuga was later identified as Defendant (Tr. at 16). On January 31, 2008, ICE Agents Scott Francis and Mark King went Defendant's home where he resided with his wife and daughter (Tr. at 16). The confidential informant went inside the residence and obtained both methamphetamine and marijuana from Defendant (Tr. at 16-17). Defendant offered to sell the confidential informant larger quantities (Tr. at 17).

Detective Ortiz applied for a search warrant to search Defendant's house (Tr. at 17). On February 5, 2008, agents from the Kansas City, Missouri Police Department's Gang Squad and from ICE conducted surveillance on the residence (Tr. at 17). They observed Defendant leaving the residence with another individual in a vehicle (Tr. at 17). A marked Kansas City, Missouri Police

5

Department vehicle conducted a traffic stop based on the belief that Defendant was moving drugs B 17). Defendant and the other individual were transported back to Defendant's house where the search warrant was being executed (Tr. at 17). Pursuant to the warrant, law enforcement recovered 261.67 grams of methamphetamine (actual), 459 grams of methamphetamine, 500 grams of methamphetamine, an American Weigh electric scale, a digital scale, a manilla envelope containing money ledgers and phone numbers, cell phones, two Food Saver heat sealers, and $1,800 in U.S. currency (Tr. at 17-18). Additionally, law enforcement discovered a Glock .357-caliber semiautomatic handgun and a handgun magazine from another pistol (Tr. at 18). Glock firearms are manufactured outside the State of Missouri (Tr. at 19).

Defendant was interviewed by ICE agents after being given Miranda warnings and executing a waiver (Tr. at 18). Defendant stated everything in the home was his and stated he took full responsibility (Tr. at 18). Defendant stated his wife had nothing to do with any of it (Tr. at 18).

10. Defendant was placed under oath (Tr. at 15). With regard to Count I, Defendant admitted he was within the Western District of Missouri between January 25, 2008 and February 5, 2008 (Tr. at 21-22). During this time, Defendant had an agreement with others concerning the distribution of 50 or more grams of methamphetamine (Tr. at 22). Defendant intentionally and willfully entered the agreement, despite knowing it was a violation of the law to do so (Tr. at 22). With regard to Count III, Defendant admitted that he was within the Western District of Missouri on February 5, 2008 (Tr. at 22). On February 5, 2008, Defendant was an illegal alien and possessed a Glock .357-caliber handgun (Tr. at 23). Defendant did not dispute that the handgun was manufactured outside the State of Missouri (Tr. at 23).

11. Defendant indicated that he understood the plea agreement he had with the government (Tr. at 24, 25-36). As part of the agreement, Defendant agreed to plead guilty to Counts One and Three; in exchange, the government agreed to dismiss Count Two at the time of sentencing (Tr. at 25, 31).

12. No one had made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 39).

13. Defendant is satisfied with the representation he has received from his attorneys (Tr. at 39). There is nothing they have done that Defendant did not want them to do, and there is nothing he wanted them to do that they have not done (Tr. at 39).

14. Defendant is forty years old and completed the eleventh grade (Tr. at 40). He did not have any difficulty understanding what went on during the change of plea hearing and had not encountered any difficulty communicating with his attorneys (Tr. at 40). Defendant did not have any physical or mental health concerns that would prevent him from entering an intelligent and voluntary plea of guilty to this charge (Tr. at 40). He was not under the influence of drugs or anything else that would cloud his ability to intelligently waive his right to a jury trial (Tr. at 40).

15. Defendant tendered a plea of guilty to Counts One and Three of the Indictment (Tr. at 42-43).

### V. ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for conspiracy to distribute a controlled substance include: (1) there was an agreement to distribute the controlled substance; (2) the defendant knew of the agreement; and (3) the defendant intentionally joined the conspiracy. United States v. Savatdy, 452 F.3d 974, 977 (8th Cir. 2006); United States v. Alexander, 408 F.3d 1003,

1008 (8th Cir. 2005).

The elements necessary to sustain a conviction for being an illegal alien in possession of a firearm include: (1) the defendant was an illegal alien; (2) the defendant knowingly possessed a firearm; and (2) the firearm had been in or had affected interstate commerce. United States v. Aleman-Ramos, 155 Fed. Appx. 845, 851 (6th Cir. 2005); see also United States v. Boyd, 180 F.3d 967, 978 (8th Cir. 1999); United States v. Bazargan, 922 F.2d 844, 848 (8th Cir. 1993).

### *V. CONCLUSION*

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a magistrate judge for issuance of a report and recommendation on whether Defendant's guilty plea should be accepted.

2. Defendant has consented to having his plea taken by a magistrate judge.

3. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of Counts One and Three of the Indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty plea and adjudging Defendant guilty of Counts One and Three of the Indictment.

                                                    */s/ Robert E. Larsen*
                                                    ROBERT E. LARSEN
                                                    United States Magistrate Judge

Kansas City, Missouri
October 1, 2009